## Ex Parte Schollenberger.

A foreign insurance company was doing business in Pennsylvania under a license granted pursuant to a statute, which, among other things, provided that the company should file a written stipulation, agreeing that process issued in any suit brought in any court of that Commonwealth having jurisdiction of the subject-matter, and served upon the agent specified by the company to receive service of process for it, should have the same effect as if personally served upon the company within the State.   Suit was brought in the Circuit Court of the United States for the Eastern District of Pennsylvania by a citizen of that State against the company, and process served, in accordance with the State law, upon its agent so specified, who resided within the district.   The service of the process was quashed, because the company was not an inhabitant of or found within the district.   *Held*, 1. That the Circuit Court has jurisdiction of the suit, and should proceed to hear and determine it.   2. That said court is a court of the Commonwealth, within the intent of the statute.

PETITION for a *mandamus* to the judges of the Circuit Court of the United States for the Eastern District of Pennsylvania.

Schollenberger, a citizen of Pennsylvania, brought sundry suits in said Circuit Court against certain foreign insurance companies, upon policies which they had severally issued upon his property situate in that State and within the jurisdiction of the court.

Each company, before the issue of its policy, had accepted the provisions of the statute of the State, and, in compliance therewith, appointed its agent residing there, on whom process of law against it could be served. So much of the statute as bears on the question here involved is set out in the opinion of this court.

The service of the writs, which were sued out by Schollenberger, and executed, in accordance with the State law, on the agents of the several companies by them respectively specified for the purpose, and residing within the jurisdiction of the court, was quashed by the Circuit Court. On his petition, setting forth the foregoing facts, a rule was awarded upon the judges of that court to show cause why a writ of *mandamus* should not be issued out of the office of this court, commanding them to hear and determine the suits so brought in the said Circuit Court, and also to strike from the record certain orders dated the thirteenth day of April, 1878, whereby the service of the said writs was quashed, and thereupon to make such disposition of the suits as ought to have been made, had the said orders not been entered.

The judges, in their return, answered, that the facts were truly stated in the petition; that the respondents declined to hear and determine the said suits, because, in their opinion, the said Circuit Court had no competent jurisdiction thereof, the defendants not having appeared therein, or in any wise submitted to the jurisdiction of the court, and not having been at the commencement of the respective suits, or at any time, inhabitants of or found in the said district, within the meaning of the act of Congress of March 3, 1875, re-enacting a like provision of the eleventh section of the act of Sept. 24, 1789; that the question under this enactment being one of jurisdic-

tion, and not of mere procedure, the statute of Pennsylvania, mentioned in the said petition, was, in the opinion of the respondents, inapplicable. The service of the process in the said suits was, therefore, set aside, as unauthorized.

*Mr. R. C. McMurtrie* and *Mr. A. Sydney Biddle* for Schollenberger.

1. The jurisdiction of the Circuit Court over the parties is indisputable. Schollenberger was a citizen of Pennsylvania. The corporations were created by other States, and by entering their appearance to the actions would have become subject to that jurisdiction, which would not be the case if the requisite citizenship of the parties to the record did not exist. *Jones v. Anderson*, 10 Wall. 327.

2. *Mandamus* is the appropriate remedy.

That writ goes to the archbishop, if exercising judicial functions, *Reg. v. Canterbury*, 11 Q. B. 483 ; to a court declining to exercise judicial functions imposed by law, *Reg. v. West R. Justices*, 1 New Sess. Cas. 247; to compel making a warrant of distress, *St. Lukes v. Middlesex*, 1 Wils. 133 ; on a refusal to act because of a statute which did not apply to the case, *Reg. v. Bingham*, 4 Q. B. 877 ; on a refusal to hear an appeal for reasons which were not legal ones, *Reg. v. Middlesex*, 2 B. C. R. 82; on a refusal because of an erroneous opinion as to sufficiency of grounds, *Reg. v. Carnarvon*, 1 G. & D. 423; or on erroneous point of practice, *Reg. v. Kistevan*, 3 Q. B. 810; on a refusal of the Circuit Court to take jurisdiction of a cause removed to it from a State court, *Railroad Company v. Wiswall*, 23 Wall. 567 ; on a refusal to grant an appeal to which a party is entitled, *Ex parte Cutting*, 94 U. S. 14; *Ex parte Jordan*, id. 248.

3. The State had a right to impose the prescribed conditions to the transaction of the business of insurance within her territory by the companies. *Doyle v. Insurance Company*, 94 U. S. 535; *Lafayette Insurance Co. v. French*, 18 How. 404; *Railroad Company v. Harris*, 12 Wall. 65. The latter having accepted them, and subsequently issued the policies which are the subject-matter of the suits in question, were bound to specify, and did specify, agents residing within the State upon whom process could be served. Service in the mode prescribed by the State

law, upon such agents actually within the jurisdiction of the court, was, therefore, good under the act of Congress (17 Stat. 197), and had the same effect as if personally made within the eastern district of Pennsylvania upon the respective companies.

4. Each of the companies had, therefore, a *habitat* for the purposes of jurisdiction within that district, and was found there, within the meaning of the act of Congress of March 3, 1875 (18 Stat. 470). *Knott* v. *Southern Life Insurance Co.*, 2 Woods, 479; *Railroad Company* v. *Harris, supra.*

*Mr. Richard P. White, contra.*

1. *Mandamus* is not the proper remedy.

The question raised on the motion below to quash the service of the writs was one of jurisdiction, and the judges in passing upon it were obviously acting in a judicial, and not in a ministerial, capacity. The proceeding may be reviewed on error; but it is not the office of a *mandamus* to compel an inferior court to reverse a decision made in the exercise of its legitimate jurisdiction. *Ex parte Flippin*, 94 U. S. 348.

2. The service of the writs was properly quashed. Each of the defendants was a foreign corporation, not having an existence, nor its officers any official character, outside the limits of the State which created it. *Bank of Augusta* v. *Earle*, 3 Pet. 519; *Ohio & Mississippi Railroad Co.* v. *Wheeler*, 1 Black, 286. It could not, therefore, be found within the district. Although the pretended service was according to the State law, the act of Congress requiring conformity of process and procedure did not make it good, if a court of the United States had no power to issue the writ, or proceed in the cause. That power cannot be derived from State legislation, *Toland* v. *Sprague*, 12 Pet. 300; *Levy* v. *Fitzpatrick*, 15 id. 167; *Insurance Company* v. *Morse*, 20 Wall. 445; and Congress, so far from conferring it, has prohibited a suit in the Circuit Court against a person not an inhabitant of nor found within the district.

The writs, for the service of which the statute of Pennsylvania provides, are, by an express limitation, confined to those sued out in actions brought in the tribunals of that State.

If, however, each company, by its acceptance of that statute, was constituted, *pro tanto*, a Pennsylvania corporation, then the Circuit Court had no jurisdiction, as both parties were, for the purposes of the suit, citizens of the same State. Where a corporation exists in two States, it cannot be sued in a Federal court by a citizen of either of them. *Ohio & Mississippi Railroad Co.* v. *Wheeler, supra.*

The decision of the Circuit Court is sustained by *Pomeroy* v. *New York & New Haven Railroad Co.*, 4 Blatchf. 120; *Day* v. *Newark India-rubber Manufacturing Co.*, id. 628; *Southern Atlantic Telegraph Co.* v. *The New Orleans, Mobile, & Texas Railroad Co.*, 2 Cent. Law Jour. 88; and *Stilwell* v. *The Empire Fire Insurance Co.*, 4 id. 88.

*Railroad Company* v. *Harris*, upon which great reliance is placed on the other side, was a suit brought in the District of Columbia against a foreign corporation doing business there, under an act which provided that service might be made upon the agent. Congress may undoubtedly regulate the mode of serving process in the courts of that District, and prescribe the conditions upon which foreign corporations may there transact business. Its power in that regard is the same as that of the several States within their respective limits, and no one questions that Pennsylvania can determine the manner in which writs issued by her own courts may be executed. That case differs essentially from this. Congress, by an act solely applicable to a specific territory, extended the jurisdiction of its courts to suits against a foreign corporation doing business there, when process should be served in the mode prescribed; while by the act of March 3, 1875, which governs here, it withholds from the Circuit Court jurisdiction over a defendant not an inhabitant of or found within the proper district.

The opinion in that case must, therefore, be understood with reference to the facts. Although not relating to the effect of State legislation upon the service of Federal writs, it evidently misled the learned judge of the fifth circuit in *Knott* v. *Southern Life Insurance Co.* It should also be borne in mind that the statute which he had under consideration differs from that of Pennsylvania, in requiring the foreign company

doing business in Alabama to consent that service upon its agents there shall be sufficient, without restriction as to the courts out of which the writ may issue.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a petition for a writ of *mandamus*, requiring the judges of the Circuit Court of the United States for the Eastern District of Pennsylvania to hear and determine certain suits brought in that court in favor of the relators against a number of insurance companies incorporated by the laws of other States, but doing business in that State under a license granted pursuant to a statute regulating that subject. The Circuit Court declines to entertain jurisdiction of the causes, for the reason, as is alleged, that the defendant companies were not " at the commencement of the respective suits, or at any time, inhabitants of or found in the said district." This presents the only question in the case, as it is conceded that the citizenship of the parties is such as to give the court jurisdiction, if the several defendants can be sued in the district without their consent.

A statute of Pennsylvania provides that " no insurance company not of this State, nor its agents, shall do business in this State until he has filed with the insurance commissioner of this State a written stipulation, duly authenticated by the company, agreeing that any legal process affecting the company served on the insurance commissioner, or the party designated by him, or the agent specified by said company to receive service of process for the said company, shall have the same effect as if served personally on the company within this State ; and, if such company should cease to maintain such agent in this State, so designated, such process may thereafter be served on the insurance commissioner ; but, so long as any liability of the stipulating company to any resident of this State continues, such stipulation cannot be revoked or modified, except that a new one may be substituted, so as to require or dispense with the service at the office of said company within this State, and that such service of process according to this stipulation shall be sufficient personal service on the company. The term ' pro-

cess' includes any writ of summons, subpœna, or order whereby any action, suit, or proceedings shall be commenced, or which shall be issued in or upon any action, suit, or proceedings brought in any court of this Commonwealth having jurisdiction of the subject-matter." Laws of Penn., 1873, p. 27, sect. 13.

The return to the rule to show cause admits that all the defendant companies were doing business in the State under this statute, and that their designated agents were duly served with process in each of the suits. For the purposes of this hearing, the fact of due service upon the agents must be considered as established. If in reality it is not so, the court below will not be precluded by any thing in this proceeding from inquiring into the truth, and acting upon the facts as they are found to exist.

The act of 1875, determining the jurisdiction of the circuit courts (18 Stat. 470), and which in this particular is substantially a re-enactment of the act of 1789 (1 Stat. 79, sect. 11), provides that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceedings, except," &c.

It is unnecessary to inquire whether these several companies were inhabitants of the district. The requirements of the law, for all the purposes of this case, are satisfied if they were found there at the time of the commencement of the suits; and that question, we think, was settled in *Railroad Company* v. *Harris*, 12 Wall. 65. In that case, it appears that, when the suit was commenced, the statutes defining the jurisdiction of the courts of the District of Columbia provided that "no action or suit shall be brought . . . by any original process against any person who shall not be an inhabitant of or found within the District at the time of serving the writ." 2 Stat. 106, sect. 6. Afterwards, in 1867, the law was changed in respect to foreign corporations doing business in the District, and service allowed upon the agent (14 Stat. 404, sect. 11); but when the suit was begun and the process served the old law was in force. The Baltimore and Ohio Railroad Company, a Maryland corporation, was authorized by Congress to construct and extend its

railroad into the District of Columbia. Harris, having been injured while travelling as a passenger upon the railroad outside of the District, sued the company in the Supreme Court of the District, and caused the writ to be served upon the president of the company within the District. The company objected to the jurisdiction of the court, and insisted that it was neither an inhabitant of nor found within the District. In ruling upon this objection, we held that, although the company was a foreign corporation, it was suable in the District, because it had in effect consented to be sued there, in consideration of its being permitted by Congress to exercise therein its corporate powers and privileges. The language of the court, speaking through Mr. Justice Swayne, is: " It (a corporation) cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. If it do business there, it will be presumed to have assented, and will be bound accordingly." Then, after an examination of the statute granting the right to extend the road, it was said (p. 84): "We entertain no doubt that it made the company liable to suit where this suit was brought, in all respects as if it had been an independent corporation of the same locality." This language was cited with approbation, and adopted as a correct exposition of the law by Mr. Justice Field, speaking for the court, in *Railway Company* v. *Whitton*, 13 Wall. 270.

Applying these principles to the present case, there cannot be any doubt, as it seems to us, of the jurisdiction of the Circuit Court over these defendant companies. They have in express terms, in consideration of a grant of the privilege of doing business within the State, agreed that they may be sued there; that is to say, that they may be found there for the purposes of the service of process issued " by any court of the Commonwealth having jurisdiction of the subject-matter." This was a condition imposed by the State upon the privilege granted, and it was not unreasonable. *Lafayette Insurance Co.* v. *French*, 18 How. 404. It was insisted in argument that the statute confines the right of suit to the courts of the State; but we cannot so construe it. There is nothing to manifest such an

intention; and, as the object of the legislature evidently was to relieve the citizens of Pennsylvania from the necessity of going outside of the State to seek judicial redress upon their contracts made with foreign insurance companies, it is but reasonable to suppose that they were entirely at liberty to select the court in the State having jurisdiction of the subject-matter, which, in their judgment, was the most convenient and desirable. As the company, if sued in a State court, could remove the cause to the Circuit Court, and thus compel a citizen of the State to submit to that jurisdiction, we see no reason why the citizen may not, if he desires it, bring the company into the same jurisdiction at the outset. While the Circuit Court may not be technically a court of the Commonwealth, it is a court within it; and that, as we think, is all the legislature intended to provide for.

States cannot by their legislation confer jurisdiction upon the courts of the United States, neither can consent of parties give jurisdiction when the facts do not; but both State legislation and consent of parties may bring about a state of facts which will authorize the courts of the United States to take cognizance of a case. *Ex parte McNeil*, 13 Wall. 236. Thus, if the parties to a suit, both plaintiff and defendant, are in fact citizens of the same State, an agreement upon the record that they are citizens of different States will not give jurisdiction. But if the two agree that one shall move into and become a citizen of another State, in order that jurisdiction may be given, and he actually does so in good faith, the court cannot refuse to entertain the suit. So, as in this case, if the legislature of a State requires a foreign corporation to consent to be "found" within its territory, for the purpose of the service of process in a suit, as a condition to doing business in the State, and the corporation does so consent, the fact that it is found gives the jurisdiction, notwithstanding the finding was procured by consent. The essential fact is the finding, beyond which the court will not ordinarily look.

A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter; but it may by its agents transact business anywhere, unless prohibited by its

charter or excluded by local laws. Under such circumstances, it seems clear that it may, for the purpose of securing business, consent to be " found " away from home, for the purposes of suit as to matters growing out of its transactions. The act of Congress prescribing the place where a person may be sued is not one affecting the general jurisdiction of the courts. It is rather in the nature of a personal exemption in favor of a defendant, and it is one which he may waive. If the citizenship of the parties is sufficient, a defendant may consent to be sued anywhere he pleases, and certainly jurisdiction will not be ousted because he has consented. Here, the defendant companies have provided that they can be found in a district other than that in which they reside, if a particular mode of proceeding is adopted, and they have been so found. In our opinion, therefore, the Circuit Court has jurisdiction of the causes, and should proceed to hear and decide them.

We are aware that the practice in the circuit courts generally has been to decline jurisdiction in this class of suits. Upon an examination of the reported cases in which this question has been decided, we find that in almost every instance the ruling was made upon the authority of the late Mr. Justice Nelson, in *Day* v. *The Newark India-rubber Manufacturing Co.*, 1 Blatchf. 628, and *Pomeroy* v. *The New York & New Haven Railroad Co.*, 4 id. 120. These cases were decided by that learned justice, the one in 1850 and the other in 1857, long before our decision in *Railroad Company* v. *Harris* (*supra*), which was not until 1870, and are, as we think, in conflict with the rule we there established. It may also be remarked, that Mr. Justice Nelson, as a member of this court, concurred in that decision.

Judge Woods, of the fifth circuit, has already decided in favor of the jurisdiction in *Knott* v. *The Southern Life Insurance Co.* (2 Woods, 479), and Judge Dillon, of the eighth circuit, declined to take it, only because he felt himself foreclosed by the rulings of other judges, and especially of Mr. Justice Nelson. *Stillwell* v. *The Empire Fire Insurance Co.*, 4 Cent. Law Jour. 463. *Writ of mandamus granted.*